IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| OMARI E. CLARK, | § | |
| | § | |
| Defendant Below, | § | No. 150, 2017 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1006026385 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 13, 2017
Decided: January 10, 2018

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## O R D E R

This 10th day of January 2018, having considered the briefs and the record below, it appears to the Court that:

(1)     In March 2015, a Superior Court jury found Omari Clark guilty of Manslaughter and Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF") in connection with the June 2010 stabbing death of Wyatt Brower.[1]   Thereafter, Clark was sentenced to 30 years' imprisonment, suspended

---

[1]The lapse of time between the offense and conviction is explained by the fact that this was Clark's second trial.  Clark was arrested on July 1, 2010 and charged with Murder in the First Degree and PDWDCF.  In May 2011, a Superior Court jury convicted Clark of Manslaughter and PDWDCF, and he appealed.  In May 2013, this Court reversed those convictions because of the trial judge's failure to give a justification instruction for the lesser included offense of manslaughter. *Clark v. State,* 65 A.3d 571, 581-82 (Del. 2013).

after 22 years, followed by probation. Clark raises one argument on appeal—that the failure of the Superior Court to provide a "missing evidence" jury instruction deprived him of due process and his right to a fair trial. Finding no merit to Clark's contention, we AFFIRM Clark's convictions.

(2)    The incident leading to Brower's death began when Clark went to the Brower residence in Wilmington, Delaware looking for his infant daughter's mother, Nish, who was the girlfriend of Brower's grandson. When Clark knocked on the front door, Vanessa Brower, Wayne Brower's wife, answered. Clark asked Vanessa if Nish was in the house. At first, Vanessa believed that Nish was not present and so advised Clark, who then left. But shortly after Clark left, Vanessa learned that Nish was in her home, so she went out into the street to see if Clark was still in the vicinity. He was, and Vanessa told him that Nish was in fact at the Brower residence and would come out to speak with him.

(3)    After Clark engaged in a physical altercation with Nish outside the residence, Wayne Brower exited the residence and announced his intention to call the police. Clark responded by punching Brower in the face. The situation deteriorated further when two of Brower's sons and his grandson came to his defense. One of Brower's sons hit Clark in the back of the head with a metal chair. Clark then fled on foot, but not long thereafter returned to the Brower residence wielding a knife.

2

(4)     When Clark returned with the knife, Wayne Brower came back out of the residence with a walking stick.  As Brower came out of the house, he beat the stick on the steps and hollered, "I'm tired of this,"[2] and "leave my family alone."[3] The banging of the walking stick caused it to break in two, but Brower was able to hold on to the skinnier part of the stick.

(5)     According to Teheshia Morris, another of the Browers' children who was watching from the front door, Brower was trying to get his family members back into the house while backing up the steps, when he lost his balance and fell backwards.  As Brower lay supine, Teheshia witnessed Clark "run[] up [and] stab[] [her] father [in the] stomach."[4]  After he stabbed Brower, Clark ran to his car.  As he drove away, Nigel Morris struck Clark's car with one of the pieces of the broken walking stick, but that did not impede Clark's escape.

(6)     Shaunte Brown, a witness called by the defense, confirmed that Brower was wielding a stick, which she also described as "like a mop head," when he came out of his house before his final encounter with Clark.[5]  Brown described how "the older man, [Brower]" was swinging the stick like a "baseball bat,"[6] and "actually

---

[2] App. to Ans. Br. at B15.
[3] App. to Opening Br. at A53.
[4] App. to Ans. Br. at B16.
[5] App. to Opening Br. at A61.
[6] *Id.* at A60-A61.

connected more than the younger one [Clark] because he had a long stick."[7] According to Brown, as Brower began to walk backwards toward his house, he started to lose his footing, "but the stick [was] out extended this way, he's still hitting."[8] Brown testified that Clark then punched Brower and did not see the knife with which the other witnesses saw Clark stab Brower.

(7) When the police interviewed Clark after his arrest, he claimed that Brower came at him with "a bat," and that he was defending himself when he stabbed Brower.[9] Brower died later that evening as a result of the stab wounds.

(8) The responding officers from the Wilmington Police Department ("WPD"), who arrived on the scene at 10:22 p.m., approximately three minutes after being notified of the fight, were told that "a person had been stabbed."[10] They rendered first aid to Brower and called for an ambulance, which arrived within five minutes. They then secured the scene and talked to the people who were inside the residence asking them to describe what happened.

(9) Sergeant Karchner of the WPD Evidence Detection Unit arrived at the scene at 11:30 p.m. Because a stabbing had occurred, he collected, among other things, a knife from a butcher block found in the Browers' kitchen, fingerprinted

---

[7] *Id.* at 60.
[8] *Id.*
[9] State's Ex. 20.
[10] App. to State's Ans. Br. at B1-B2.

4

various items, and took photographs of the scene. He recalled seeing sticks and debris in the street in front of the residence but, because the presence of such material "wouldn't be uncommon . . . in the roadway . . . of a tree-lined block in the city," and did not, in his opinion, have any "specific evidentiary value," he did not collect any of the sticks and debris.[11]

(10) When Sergeant Karchner was photographing and collecting the physical evidence, he did not know that Brower had brandished a walking stick shortly before Clark stabbed him.

(11) Clark did not testify at trial but the State introduced a recorded statement, in which Clark claimed that he acted in self-defense. According to Clark, "[t]he defense was focused entirely on the concept of self-defense."[12] Among other things, he contends that the fact that he believed that Brower was wielding not a stick but a bat somehow bolstered his justification defense.

(12) Clark now claims that the investigating officers' failure to collect the fragments of the walking stick, a portion of which the State concedes was in Brower's possession when Clark stabbed him, entitled him to a "missing evidence" instruction, which the trial judge refused to give. We understand him to mean he

---

[11] *Id.* at B4.

[12] Appellant's Opening Br. at 16.

5

was entitled to a *Lolly* instruction telling the jury to assume that the missing evidence would have tended to support his self-defense argument.

(13) Our review of the trial court's refusal to give the requested jury instruction is *de novo*.[13]

(14) The State has a duty to preserve evidence that is material to a defendant's guilt or innocence.[14] In *Lolly v. State*,[15] we extended that duty to the collection of evidence *ab initio*. We recently explained the consequences flowing from the State's violation of this duty:

> Where missing evidence is not case dispositive, a consequence for the State's failure to collect or preserve material evidence is a *Lolly* instruction, entitling the defendant to the inference that such evidence would have been exculpatory. That is, "[a] missing evidence instruction, or *Lolly* instruction, tells the jury, in a case where the State has failed to collect or preserve evidence which is material to the defense, to assume that the missing evidence would have tended to prove the defendant not guilty."[16]

(15) But "for the police to have a duty to collect and preserve specific evidence, the police must have had a reason, *at that time*, to believe that evidence might be exculpatory."[17] Here, Sergeant Karchner testified that he did not see any sticks or debris that appeared to have any evidentiary value or "anything that

---

[13] *Wright v. State*, 953 A.2d 144, 148 (Del. 2008).
[14] *Deberry v. State*, 457 A.2d 744, 751 (Del. 1983).
[15] 611 A.2d 956 (Del. 1992).
[16] *Baynum v. State*, 133, A.3d 963, 967 (Del. 2016).
[17] *Powell v. State*, 49 A.3d 1090, 1101 (Del 2012) (emphasis added).

resembled a walking-stick."[18] Clark does not explain why Sergeant Karchner should have recognized that the sticks and debris that one would expect to find on the tree-lined street where the Browers lived had any evidentiary significance. Because the police had no duty to collect that evidence, the trial judge correctly denied Clark's request.

(16) Although the absence of a duty to collect the evidence forms a sufficient basis for affirming the Superior Court's judgment, other bases exist, including the absence of negligence or bad faith, the availability of substitute or secondary evidence, and the sufficiency of other evidence.

(17) Clark claims that Sergeant Karchner was negligent because he failed to inform himself appropriately before initiating his search for, and collection of, evidence at the scene. But based on the testimony at trial, had Karchner conducted extensive interviews of the witnesses before searching, he would have learned that, at the time of his final altercation with Clark, Brower had a walking stick in his hands. Karchner testified that, as he searched for evidence, he did not see anything resembling a walking stick. The sticks he saw in the road were nothing more than what he expected to see on a tree-lined street. On these facts, we cannot conclude that Karchner was negligent.

---

[18] App. to State's Ans. Br. at B4.

7

(18)   Regarding the availability of substitute or secondary evidence, as mentioned, the State conceded that Brower was in possession of a walking stick.  In this regard, Clark has not explained the legal significance of his belief that Brower was holding a bat instead of a walking stick.  What is more, it bears noting that, when Clark's lawyer was asked by the trial judge to identify "[t]he missing evidence that we're talking about," he replied, "The cane, Moses staff, stick, whatever one may call it."[19]

(19)   Finally, there was ample evidence supporting the jury's verdict.  More particularly, at least two eyewitnesses (Teheshia Morris and Nigel Morris) testified that they saw Clark stab Brower after he had fallen on his front porch.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[19] *Id*. at B39.

8